# EXHIBIT C

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
                                            SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG         Case No. 10 CVS _15498_

KEENYA T. JUSTICE )
   Plaintiff, )
                                )
   v.                              )            COMPLAINT
                                )          (Jury Trial Demanded)
JAMIE DIMON, DAVE B. LOWMAN and JP )
MORGAN CHASE & CO., )
   Defendant. )
                                )

Plaintiff, KEENYA T. JUSTICE, complaining of Defendants, JAMIE DIMON, DAVE B. LOWMAN and JP MORGAN CHASE & CO., alleges and says:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Keenya T. Justice (hereinafter "Plaintiff"), is a citizen and resident of Mecklenburg County, North Carolina and has been since July 1999.

2. Defendant JP MORGAN CHASE & CO (hereinafter "Defendant CHASE") is a national bank, incorporated in the state of Delaware.

3. Plaintiff is a homeowner whose home is located in Mecklenburg County, North Carolina.

4. On or about June 16, 2003, Plaintiff borrowed funds (hereinafter the "Loan") and executed a Promissory Note in Mecklenburg County North Carolina (hereinafter the "Note") to purchase her Mecklenburg County home.

5. On or about June 16, 2003, Plaintiff executed a deed of trust, in Mecklenburg County North Carolina, to secure payment and performance of her obligations under the above-mentioned Note.

6. Subsequently, Defendant CHASE was assigned to receive Plaintiff's payments under the terms of the Note and/or deed of trust that was executed in Mecklenburg County North Carolina.

7. Pursuant to the terms of the Note, Plaintiff became obligated to pay, and did pay, monthly installments to Defendant CHASE to amortize the Loan.

8. Plaintiff's transaction with Defendant is governed by North Carolina General Statute ("N.C.G.S.") §24-2.1.(e).

9. Sometime after the Loan origination date Plaintiff suffered financial hardship and has been unable to pay the monthly installments as contracted.

10. Plaintiff seeks to permanently modify the terms of her Note in a way that would result in a lower monthly installment payment pursuant to the federal government's $75 billion dollar Home Affordable Modification Program (hereinafter "HAMP"), which was designed to encourage lenders such as Defendant CHASE to, inter alia, reduce loan, mortgage and/or deed of trust interest rates to as low as two-percent.

11. Defendant CHASE services Plaintiff's Loan, which is secured by the deed of trust.

12. As the servicer of the Loan, Defendant CHASE is responsible for, inter alia, monitoring and reporting Plaintiff's loan payments, handling property tax, insurance escrows and late fees, foreclosing defaulted loans and remitting payments to the lender.

13. Upon information and belief, Defendant CHASE is also responsible for modifying the Plaintiff's Loan terms such as lowering the interest rate and/or principal balance and/or lengthening the amortization schedule to reduce the monthly loan payments pursuant to the above-mentioned federal government's $75 billion HAMP program.

14. Pursuant to the federally funded Troubled Asset Relief Program (hereinafter "TARP"), Defendant CHASE received a $25 billion dollar loan from the federal government (ultimately from taxpayers such as Plaintiff) to increase its liquidity, strengthen its balance sheet and remain in business.

15. Defendant CHASE repaid the above-mentioned $25 billion federal loan and later reported net income of $3.3 billion dollars and $4.8 billion dollars for the first and second quarters of 2010 respectively.

16. Defendant CHASE seeks business and conducts business throughout the world and in Mecklenburg County, North Carolina.

17. Defendant CHASE invests in and/or services deeds of trust; the real property collateral for which is located in Mecklenburg County, North Carolina.

18. Defendant CHASE invests in and/or services loans for which the underlying collateral is real property located in Mecklenburg County, North Carolina.

19. Defendant Jamie Dimon (hereinafter "Defendant DIMON") is the Chief Executive Officer (hereinafter "CEO") and Chairman of Defendant CHASE and is responsible for, inter alia, guiding employees and other executive officers towards the company's central goals and objectives.

20. Defendant DAVE B. LOWMAN (hereinafter "Defendant LOWMAN") is Chief Executive Officer of Home Lending for Defendant CHASE and is responsible for, inter alia, guiding employees within the company's Home Lending Division towards that division's central goals and objectives.

21. On or about April 15, 2010, at a Congressional hearing, and in response to a question posed by Congressman Barney Frank, Defendant LOWMAN gave testimony that the Neighborhood Assistance Corporation of America (hereinafter "NACA") and other community groups who are either unsuccessful in their attempts to modify a loan, mortgage or deed of trust or who are attempting to appeal a decision to modify the same through Defendant CHASE's established resolution channels should come to see him.

22. Upon information and belief, at the conclusion of the above-mentioned Congressional hearing when NACA members tried to approach Defendant LOWMAN with their questions and concerns regarding said modifications, Defendant LOWMAN physically ran away from those NACA members and Capitol Hill police were called to the scene.

23. Defendant LOWMAN's actions are inconsistent with, a lender's obligation to act in good faith pursuant to N.C.G.S. §45-36.2.

24. The business decisions, action and/or inactions of Defendant DIMON, Defendant LOWMAN and Defendant CHASE (hereinafter collectively "Defendants") are contrary to current public policy and have adversely affected Plaintiff's ability to maintain ownership of her Mecklenburg County, North Carolina home.

25. Pursuant to N.C.G.S. §24-2.1.(e), §1-75.4. (5)(a) and §1-75.4. (6)(a) and (d), this court has personal jurisdiction over all the named Defendants in this case.

26. NACA is a non-profit, community advocacy and homeownership organization headquartered in Boston, Massachusetts and operates offices and/or call centers throughout the United States.

27. Upon information and belief, NACA is the largest Housing Counseling Agency (National Intermediary) approved by the United States Department of Housing and Urban Development.

28. As a National Intermediary, NACA provides affordable housing solutions to home owners and potential homeowners by, inter alia, providing low interest rate loans and financial counseling, advocating for affordable housing and

representing individual homeowners who are trying to restructure or modify the terms of their loan, mortgage and/or deed of trust including modifications pursuant to the federal government's $75 billion HAMP program.

29. NACA's "Home Save" program provides a mandatory comprehensive budgeting seminar and counseling services to homeowners which aids in determining the maximum sustainable monthly loan, deed of trust and/or mortgage payment a homeowner can affordable to pay. The services NACA provides are free to homeowners.

30. NACA's "Save the Dream" program is a program that tours throughout the United States and provides the "Home Saves" services to homeowners over the course of five consecutive days, twenty-four hours a day.

31. NACA held a "Save the Dream" event in Mecklenburg County, North Carolina on December 3, through December 7, 2009.

32. NACA operates a field office employing hundreds of people in Mecklenburg County, North Carolina.

33. The amount in controversy, exclusive of interest and cost, exceeds $10,000.

34. This Court has subject matter jurisdiction over the claims in this Complaint.

35. The Court has personal jurisdiction over the Plaintiff and Defendant DIMON, Defendant LOWMAN and Defendant CHASE in that this is an action "claiming injury to person or property" pursuant to North Carolina's long arm statute; Plaintiff's suit against Defendants arises out of Defendant's breach of contract with NACA for which the Plaintiff is an intended third party beneficiary. Defendants caused injury to person or property within this State through its actions or inaction by virtue of its breach of contract with NACA.

## A VALID AND ENFOREABLE CONTRACT EXISTS TO WHICH PLAINTIFF IS AN INTENDED THIRD-PARTY BENEFICIARY

36. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 35 above.

37. On or about February 6, 2009, an Agreement was executed between NACA and Defendant CHASE whereby NACA was obligated to provide counseling services to homeowners who seek to modify their loan, mortgage and/or deed of trust.

38. The purpose of NACA's Agreement with Defendant is to facilitate NACA's "Home Save" program, the purpose of which is to represent homeowners, such as Plaintiff, with an unaffordable loan payment in their efforts to permanently restructure or modify the terms of their Note.

39. The Agreement is crucial to NACA's "Home Save" program as it enables NACA to communicate with loan servicers about the details of individual borrower's situations and implement solutions that provide long-term affordable circumstances where there is stable income tailored to each troubled loan.

40. Pursuant to the Agreement Defendant CHASE was obligated to work with NACA to modify or restructure homeowner's loans, mortgages and/or deeds of trust that Defendant CHASE services on behalf of Chase Home Finance, LLC and its affiliates and to cease foreclosures upon homeowners.

41. Pursuant to the terms of the Agreement, Defendant CHASE is obligated to attend and participate in NACA's Save the Dream events which puts lenders/services, such as Defendant CHASE in face-to-face meetings with homeowners and their NACA representatives to provide an affordable mortgage solution during their meeting that day.

42. Pursuant to the Agreement homeowners, such as the Plaintiff, are entitled to modify the terms of their Note, mortgages and/or deed of trust and save their homes based upon the solutions negotiated by NACA.

43. Pursuant to the Agreement, NACA has a duty to counsel Plaintiff, Defendant CHASE has a duty to meet with Plaintiff at NACA's Save the Dream events and to cease foreclosure upon Plaintiff's home, and Plaintiff is entitled to modify the terms of her Note based upon solutions negotiated by NACA.

44. Pursuant to the Agreement, both NACA and Defendant CHASE have a duty to perform on Plaintiff's behalf as a result Plaintiff is the direct, stated and intended beneficiary of both party's performance under the Agreement.

45. Both NACA and Defendant CHASE are obligated, by the Agreement, to perform services on Plaintiff's behalf.

46. Plaintiff is an intended third-party beneficiary of the NACA/Chase Agreement as Plaintiff is among the class of people (distressed homeowners) to whom both NACA and Defendant CHASE are obligated to direct their services pursuant to the Agreement.

47. Upon information and belief, NACA has negotiated similar agreements with several of the nations leading servicers who acknowledge the validity of their agreements and honor their agreements with NACA by their continued participation in NACA's Save the Dream program.

48. Upon information and belief, the Agreement between NACA and Defendant is valid and enforceable.

## COUNT I – BREACH OF CONTRACT

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 above.

50. Plaintiff obtained the above-mentioned budgeting and counseling services from NACA, became a NACA member and requested that NACA represent and advocate for Plaintiff in her dealings with Defendant CHASE to restructure or modify the terms of her loan, mortgage and/or deed of trust to obtain a long-term affordable monthly installment payment pursuant to the federal government $75 billion dollar HAMP program.

51. Plaintiff attended NACA's Save the Dream event in West Palm Beach, Florida on or about February 25, 2010. Defendant CHASE did not have any representatives in attendance at that event to speak to Plaintiff or the many other homeowners from around the country who came there to speak to them.

52. Plaintiff attended NACA's Save the Dream event in Miami, Florida on or about April 15, 2010. Defendant CHASE did not have any representatives in attendance at that event to speak to Plaintiff or the many other homeowners who came to speak to them there.

53. On the same date as the above-mentioned Miami, Florida Save the Dream event, Defendant CHASE hosted a competing event several miles away.

54. Plaintiff met with Defendant CHASE representatives at its competing event in Miami, Florida on April 16, 2010, as was told to resubmit her loan modification application which Plaintiff did via fax within days.

55. Defendant CHASE later informed Plaintiff that, as a condition precedent to Defendant CHASE reviewing Plaintiff's recently re-submitted loan modification application, Plaintiff would first have to relinquish any relationship she had with NACA. Defendant CHASE sent Plaintiff a form to sign to extinguish her relationship with NACA.

56. Plaintiff declined to relinquish her relationship with NACA.

57. Defendant has, without reasonable excuse or justification, refused and failed to perform as obligated under the terms of its Agreement with NACA. Specifically, upon information and belief, Defendant has, inter alia:

a. Failed to provide long-term affordable solutions based on the homeowner's Affordable Payment as defined by the Agreement;

b. Unilaterally required of homeowner's conditions not justified under the Agreement;

c. Required of homeowners additional documentation and underwriting conditions beyond those provided in the Agreement;

d. Failed to commit senior and responsive staff to address NACA's requests under the Agreement;

e. Failed to communicate with NACA according to the timelines outlined in the Agreement;

f. Refused to comply with the Agreement by submitting any Home Save Solution to its investor;

g. Refused to allow NACA the opportunity to appeal decisions that do not adhere to NACA's and the homeowner's desired Home Save solution;

h. Failed to provide NACA with the weekly reports required by the Agreement;

i. Rejected proposed loan structures or forbearance agreements negotiated by NACA that were entitled to approval by Defendant under the terms of the Agreement;

j. Failed to timely, reasonably and fully respond to inquires and attempts by NACA to restructure mortgages and prevent defaults and/or foreclosure against homeowners;

k. Failed to appear at and participate in NACA's Save the Dream events held in West Palm Beach and Miami, Florida;

l. Failed to otherwise perform, in accordance with and under the clear terms of the Agreement.

58. By failing to perform its obligations in good faith pursuant to its Agreement with NACA, Defendant has breached its obligations to NACA under the Agreement and deprived NACA of its ability to assist homeowners as contemplated by the Agreement.

59. By failing to perform its obligations in good faith, pursuant to the Agreement, Defendant has deprived NACA of its ability to assist homeowners as contemplated by the Agreement.

60. The Agreement between NACA and Defendant CHASE was intended to assist Plaintiff in her specific situation and was made for the express benefit of homeowners such as the Plaintiff.

61. Plaintiff has repeatedly contacted Defendant CHASE directly, (without the assistance of NACA) and has tried, unsuccessfully, to modify the terms of the Note, mortgage and/or deed of trust.

62. Plaintiff does not have adequate funds with which to pay the expenses incurred as a result of the preparation and filing of this Complaint, and requests an award from all Defendants, jointly and severally, as to attorney fees.

63. Upon information and belief, NACA gave Defendant CHASE notice of and an opportunity to cure such defaults in accordance with the terms of their Agreement.

64. Pursuant to the Arbitration Clause in the Agreement, NACA sought emergency injunctive relief pursuant to Rule O -1, et seq. of the Commercial Rules of Arbitration of the American Arbitration Association.

65. To date, Defendants have failed to cure defaults in accordance with the terms of its Agreement with NACA.

66. Defendant's failure to perform under the terms of their Agreement with NACA has harmed the Plaintiff and she seeks compensatory damages in excess of $10,000 from each Defendant.

67. Defendant's failure to perform under the terms of their Agreement with NACA has harmed the Plaintiff and she seeks punitive damages in excess of $10,000 from each Defendant.

## COUNT II- INFLICTION OF EMOTIONAL DISTRESS

68. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 above.

69. By reason of Defendant DIMON, Defendant LOWMAN and Defendant CHASE'S (hereinafter collectively "Defendants") breach of its Agreement with NACA, Plaintiff has been wrongfully deprived by Defendants of the benefits of the Agreement; specifically, Plaintiff has been unable to modify the terms of her Note, mortgage and/or deed of trust to obtain a long-term affordable loan payment from Defendants.

70. Plaintiff has suffered stress of the body and mind and has sustained actual damages in excess of $10,000 as a direct result of Defendants wrongful conduct.

71. Defendants, with full knowledge that Plaintiff, and other similarly situated homeowners, would suffer irreparable harm by its failure to perform pursuant to the terms of the Agreement with NACA, willfully and maliciously failed to perform to Plaintiff's detriment entitling the Plaintiff to an award of punitive damages from each Defendant in excess of ten thousand ($10,000.00) dollars.

72. Defendants, with full knowledge that homeowners such as the Plaintiff would suffer irreparable harm by its failure to perform pursuant to the terms of the Agreement with NACA, willfully and maliciously failed to perform to Plaintiff's detriment entitling the Plaintiff to an award of liquidated damages to the extent such damages are a part of the NACA Chase Agreement.

73. As a proximate and foreseeable result of the negligent acts of the Defendants Plaintiff suffered emotional distress and mental anguish and her peace of mind has been disturbed.

74. As a proximate and foreseeable result of the negligence of Defendants, the Plaintiff has been damaged and is entitled to recover of each Defendant, a sum in excess of ten thousand ($10,000.00) dollars in compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1. Defendants be held jointly and severally liable;

2. Defendants be compelled to specifically perform under the terms of its Agreement with NACA;

3. Defendants be compelled to modify Plaintiff's loan, mortgage and/or deed of trust to create a total monthly housing payment amount that does not exceed thirty-one percent (31%) of her net income.

4. Plaintiff have and recover of Defendants an award of punitive damages in an amount to be set at the discretion of the jury upon each count of this Complaint;

5. Plaintiff have and recover of Defendants an award of compensatory damages in an amount to be set at the discretion of the jury upon each count of this Complaint;

6. That Plaintiff's former husband, Garrett Justice, be removed as a deed of trust grantor.

7. That the cost of this action be taxed to the Defendants;

8. Plaintiff receive an award from Defendants as to attorney fees;

9. Plaintiff have such other and further relief which the Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES TRIABLE HEREIN BY A JURY.**

This the 26th day of July 2010.

THE JUSTICE FIRM, LLC

By: _____
KEENYA T. JUSTICE
State Bar No. 25719
Plaintiff
100 North Tryon Street
Suite B220-397
Charlotte, North Carolina 28202
ktjustice@thejusticefirm.com
Telephone: (704) 377-4747
Fax: (704) 376-1315

STATE OF NORTH CAROLINA

VERIFICATION

COUNTY OF MECKLENBURG

Before me, the undersigned authority, appeared, KEENYA T. JUSTICE who is personally known to me, or has produced identification, and who after first being dully sworn, deposes and says that she is the Plaintiff in the foregoing action, that she has read the foregoing COMPLAINT, is familiar with the contents thereof, that same is true of her own knowledge except as to those matters as may therein be alleged upon information and belief and as to those matters, she believes then to be true, and that she has voluntarily executed this document for the purpose(s) stated therein.

_____
Keenya T. Justice, Plaintiff

Sworn to and subscribed before me, this
22 day of July, 2010.

_____
Notary Public

Andrew H. Rudy
Printed Name of Notary Public

My Commission Expires: December 7, 2013

```
ANDREW H. RUDY
NOTARY PUBLIC
Mecklenburg County, North Carolina
My Commission Expires December 7, 2013
```

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned counsel has this date served a copy of the foregoing **COMPLAINT** on all of the parties to this cause by:

\_\_\_\_\_ Hand delivering a copy hereof to the attorney for each said party addressed as follows:

__X__ Depositing a copy hereof in the United States Mail, via registered mail return receipt postage prepaid, addressed to the Defendant as follows:

\_\_\_\_\_ Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

\_\_\_\_\_ Telecopying a copy hereof to the attorney for each said party as follows:

Jamie Dimon, CEO
JP Morgan Chase & Co.
270 Park Avenue, 48th Fl.
New York, New York 10017

Dave B. Lowman, CEO
Chase Home Lending
JP Morgan Chase & Co.
3415 Vision Drive
Columbus, Ohio 43219

This is the 26th day of July 2010.

THE JUSTICE FIRM, LLC

By _____
Keenya T. Justice
State Bar No. 25719
Plaintiff
100 North Tryon Street
Suite B220-397
Charlotte, NC 28202
ktjustice@thejusticefirm.com
Telephone: (704) 377-4747
Fax: (704) 376-1315